(No. 61883.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JAMES WARD, Appellant.

*Opinion filed October 17, 1986.*

518

520

SIMON, J., and CLARK, C.J., dissenting.

Steven Clark, Deputy Defender, and Jeffrey Walker, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert, Assistant Attorney General, of Chicago, and Joan S. Cherry, Thomas V. Gainer, Jr., and Kenneth T. McCurry, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RYAN delivered the opinion of the court:

James Ward, the defendant, and Robert Berry were charged by information in the circuit court of Cook County with the offense of burglary (Ill. Rev. Stat. 1983, ch. 38, par. 19—1). Ward was also charged with at-

tempted murder and armed violence. Following a bench trial, Berry was found not guilty. Ward was found guilty of burglary and not guilty of the other charges. Ward appealed to the appellate court contending he was not proved guilty beyond a reasonable doubt and that the circuit court erred in sentencing him to a term of six years. He contended that the sentence was imposed as a result of his protestation of innocence at the sentencing hearing. The appellate court affirmed both the defendant's conviction and his sentence in a Rule 23 order (87 Ill. 2d R. 23). (131 Ill. App. 3d 1163.) We granted the defendant's petition for leave to appeal (103 Ill. 2d R. 315).

The brief filed by the defendant in this court raises the same two issues that were raised in the appellate court. However, the petition for leave to appeal which the defendant filed in this court, and which we allowed, urged as the sole reason for granting the petition for leave to appeal the contention that the circuit court considered the defendant's protestation of innocence as an aggravating factor in imposing sentence. No question was raised in the petition for leave to appeal as to the sufficiency of the evidence to prove the defendant guilty beyond a reasonable doubt.

This court recently, in *People v. Anderson* (1986), 112 Ill. 2d 39, 44, refused to consider an issue that had not been raised in the petition for leave to appeal. In *Anderson* we pointed out that our Rule 315(b)(3) (87 Ill. 2d R. 315(b)(3)) requires that the petition for leave to appeal state the points relied on for reversal of the judgment of the appellate court. In *Anderson* the petition for leave to appeal had not raised any question concerning the appellate court's affirmance of the defendant's conviction, but raised only a question concerning the defendant's sentence. We declined to consider the validity of the conviction and considered only the issue raised in the petition

for leave to appeal, that is, the propriety of the defendant's sentence. (*People v. Anderson* (1986), 112 Ill. 2d 39, 44.) Rule 315(b)(3), however, does not preclude the consideration of all issues not raised in a petition for leave to appeal. We have found authority for the consideration of such issues in Rule 366(a)(5) (87 Ill. 2d R. 366(a)(5)) when the facts of the case present good reason to do so. (See *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 462; *Schatz v. Abbott Laboratories, Inc.* (1972), 51 Ill. 2d 143, 145.) In the case now before this court the validity of the defendant's conviction was considered and upheld by the appellate court. It appears that essentially the same questions that are now argued in this court concerning the defendant's conviction were raised in the appellate court. We therefore find that further review of these questions is unnecessary. See *People v. Anderson* (1986), 112 Ill. 2d 39, 44.

The defendant was charged with breaking into a Conrail mail car with several other men and removing therefrom bags of United States mail. The defendant and Berry were the only two individuals apprehended and prosecuted for the offense and, as noted earlier, following the bench trial, Berry was acquitted and the defendant was convicted. Following the defendant's conviction, a sentencing hearing was held which consisted primarily of a consideration of the contents of a presentence report and arguments in aggravation and mitigation. The prosecutor pointed out that the defendant had two previous felony convictions. One was for robbery in 1974, for which he was sentenced to the penitentiary for a term of from two to six years, while the other conviction was for armed robbery in 1978, for which the defendant was sentenced to the penitentiary for a term of from four to eight years. Based on these prior convictions, the prosecutor asked for an extended-term sentence and asked that the defendant be sentenced to 14

years, the maximum extended-term sentence allowed under the statute for such offense. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—2(a)(4).) Defense counsel, in response, asked that the defendant be given the minimum sentence for burglary, a Class 2 felony (Ill. Rev. Stat. 1983, ch. 38, par. 19—1(b)), which is three years (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(5)).

Following argument of counsel and before imposing sentence, the circuit court gave the defendant an opportunity to make a statement in his own behalf, pursuant to section 5—4—1 of the Unified Code of Corrections. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—4—1(a)(5).) At that time the following colloquy occurred in court:

"THE COURT: Okay, and you, Mr. Ward, you have something you want to say?

THE DEFENDANT: I don't quite understand.

THE COURT: I haven't sentenced you yet, but you want to say anything regarding the mitigation? You can say anything before I pass sentence. You have a right, or you can remain silent.

THE DEFENDANT: I trust, Judge, your judgment. The statement that you made, but I feel that if the proper evidence would have been brought out in court yesterday, which I feel for some reason why the attorney didn't speak up on the matters which alleged my conviction, and not me being innocent, as I am.

THE COURT: Well, Mr. Ward, what you are saying now almost makes me want to sentence you to what the prosecutor is asking for, because you show no repentance when you stand before me; no contrition. You have an extensive criminal history, and you stand before this Court convicted of the charge; not of all the charges you were charged with, and your lawyer did a very, very fine job. She defended two of you. One person was found not guilty of all charges.

Whether or not your crime is against property or person, I am charged by the Constitution of this State to enforce and interpret the laws, and in hearing your case,

you were given your right to a trial.

This court heard the facts, and the facts did give rise to your conviction of the burglary.

You could be sentenced to a minimum term of three years which your lawyer was asking for, and up to a maximum of fourteen years because of your past criminal history, meaning the extended term.

However, in view of the fact that your history of criminality, although extensive did not lead you to another conviction of a Class X felony, as you stand before this court, this Court does not feel that it should give you the extended term. However, I will reject the minimum term of three years and I'll double that. I'm going to make that six years, Illinois Department of Corrections, because you show no contrition, and I hope as you serve your sentence, that you will perhaps get some contrition and maybe smarten up. You are now, you are 30 years old. You are to be 30 years old. You're 29 years old."

Defendant now argues that the comment by the judge shows that he considered the defendant's protestation of innocence as an aggravating factor, which violated due process by placing a penalty on the defendant's exercise of his fifth amendment right to refuse to be a witness against himself, that is, to refuse to admit that he committed the offense. For this reason, the defendant argues that we should remand this cause to the circuit court for resentencing.

In *People v. Perruquet* (1977), 68 Ill. 2d 149, this court summarized the role of a court of review in considering a challenge to a criminal sentence and discussed the deference that should be given to the trial court's determination as follows:

"We have frequently stated that the trial judge is normally in a better position to determine the punishment to be imposed than the courts of review. (*People v. Butler* (1976), 64 Ill. 2d 485, 490; *People v. Burbank* (1972), 53 Ill. 2d 261, 275; *People v. Taylor* (1965), 33 Ill. 2d 417, 424.) A reasoned judgment as to the proper sentence to

be imposed must be based upon the particular circumstances of each individual case. (*People v. Bolyard* (1975), 61 Ill. 2d 583, 589.) Such a judgment depends upon many factors, including the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. (*People v. Dukett* (1974), 56 Ill. 2d 432, 452.) The trial judge, in the course of the trial and the sentencing hearing, has an opportunity to consider these factors 'which is superior to that afforded by the cold record in this court.' (*People v. Morgan* (1974), 59 Ill. 2d 276, 282.) We continue to find that the trial court is normally the proper forum in which a suitable sentence is to be determined and the trial judge's decisions in regard to sentencing are entitled to great deference and weight. We therefore reaffirm our long-standing rule that absent an abuse of discretion by the trial court a sentence may not be altered upon review." (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154.)

See also *People v. La Pointe* (1981), 88 Ill. 2d 482, 492.

This court has held, however, that when it is evident from the judge's remarks that the punishment was, at least in part, imposed because the defendant had refused to plead guilty but had instead availed himself of his constitutional right to trial, the sentence will be set aside. (*People v. Moriarty* (1962), 25 Ill. 2d 565, 567.) Although it may be proper in imposing sentence to grant concessions to a defendant who enters a plea of guilty, a court may not penalize a defendant for asserting his right to a trial either by the court or by a jury. See ABA Standards, Pleas of Guilty sec. 1.8 (1974).

Before reversing a sentence imposed by the trial court it must be clearly evident that the sentence was improperly imposed. (*People v. Sivels* (1975), 60 Ill. 2d 102, 104; *People v. Leckrone* (1985), 134 Ill. App. 3d 978, 983.) In making the determination, the reviewing court should not focus on a few words or statements of the trial court. Rather, the determination of whether or not

the sentence was improper must be made by considering the entire record as a whole. See *People v. Sivels* (1975), 60 Ill. 2d 102, 106; *People v. Gomez* (1963), 29 Ill. 2d 432, 435; see also *People v. Coolidge* (1963), 26 Ill. 2d 533, 541-42; *People v. Capon* (1961), 23 Ill. 2d 254, 257.

There is no direct statement in this case which indicates that the judge was predisposed to impose a more severe sentence because of the defendant's failure to plead guilty as was present in *People v. Moriarty* (1962), 25 Ill. 2d 565, where the trial court was reversed. Nor do the judge's statements in this case show the same disposition to consider the defendant's failure to plead guilty as an enhancing factor, which was the case in *People v. Sivels* (1975), 60 Ill. 2d 102, *People v. Gomez* (1963), 29 Ill. 2d 432, and *People v. Capon* (1961), 23 Ill. 2d 254, where the trial courts were not reversed. Thus, these cases are not helpful.

Nevertheless, the defendant has focused on the judge's comments concerning defendant's lack of contrition and urges this court to declare that a lack of remorse is an improper factor to consider in imposing sentence, citing *People v. Leckrone* (1985), 134 Ill. App. 3d 978. In that case the appellate court impliedly held that the lack of remorse or the persistence in a claim of innocence should not be considered by the court in fixing sentence, but that the court may consider a defendant's expression of remorse as a mitigating factor. We decline to place such a restriction on the trial judge.

The imposition of a criminal sentence should not be reduced to a litany of accepted and approved but meaningless words and phrases. In determining the appropriate sentence, the trial judge must consider all matters reflecting upon the defendant's personality, propensities, purposes, tendencies, and indeed every aspect of his life relevant to the sentencing proceeding. (*United States v. Grayson* (1978), 438 U.S. 41, 48, 57 L. Ed. 2d 582, 588,

98 S. Ct. 2610, 2614; see also *People v. La Pointe* (1981), 88 Ill. 2d 482.) In some instances and under certain factual circumstances, a continued protestation of innocence and a lack of remorse may convey a strong message to the trial judge that the defendant is an unmitigated liar and at continued war with society. Such impressions garnered by the trial judge from the entire proceeding are proper factors to consider in imposing sentence. This court has held that it was not improper for the trial court to consider its perception of the defendant's perjury in fixing the penalty to be imposed. (*People v. Meeks* (1980), 81 Ill. 2d 524, 536.) We believe that the impact of the defendant's testimony and statement upon the trial judge, assessed in light of the other information revealed during the course of the trial and the sentencing hearing, can hardly be said to be irrelevant to an appraisal of the defendant's character and his prospects for rehabilitation. See *People v. Jones* (1972), 52 Ill. 2d 247, 249-50.

In *United States v. Grayson* the court stated:

"A defendant's truthfulness or mendacity while testifying on his own behalf, almost without exception, has been deemed probative of his attitudes toward society and prospects for rehabilitation and hence relevant to sentencing." *United States v. Grayson* (1978), 438 U.S. 41, 50, 57 L. Ed. 2d 582, 590, 98 S. Ct. 2610, 2616.

In *United States v. Hendrix* (2d Cir. 1974), 505 F.2d 1233, the court stated:

"The effort to appraise 'character' is, to be sure, a parlous one, and not necessarily an enterprise for which judges are notably equipped by prior training. Yet it is in our existing scheme of sentencing one clue to the rational exercise of discretion. If the notion of 'repentance' is out of fashion today, the fact remains that a manipulative defiance of the law is not a cheerful datum for the prognosis a sentencing judge undertakes. *** Impressions about the individual being sentenced—the likelihood that he will

transgress no more, the hope that he may respond to re-habilitative efforts to assist with a lawful future career, the degree to which he does or does not deem himself at war with his society—are, for better or worse, central factors to be appraised under our theory of 'individual-ized' sentencing. The theory has its critics. While it lasts, however, a fact like the defendant's readiness to lie under oath before the judge who will sentence him would seem to be among the more precise and concrete of the availa-ble indicia." *(United States v. Hendrix* (2d Cir. 1974), 505 F.2d 1233, 1236.)

This perceptive statement of Judge Frankel was quoted by the Supreme Court in *Grayson. (United States v. Grayson* (1978), 438 U.S. 41, 51, 57 L. Ed. 2d 582, 590, 98 S. Ct. 2610, 2616.) This language acknowledges the breadth of matters the court must consider in individual-izing sentences and the propriety of the sentencing judge's considering the defendant's propensity to lie un-der oath.

We note that this court has also held that lack of re-morse *(People v. Albanese* (1984), 102 Ill. 2d 54, 80-81; *People v. La Pointe* (1981), 88 Ill. 2d 482, 501) and the defendant's failure to show a penitent spirit *(People v. Morgan* (1974), 59 Ill. 2d 276, 282; *People v. Gomez* (1963), 29 Ill. 2d 432, 435) may properly be considered in determining sentences.

The defendant's continued protestation of innocence and his lack of remorse following a determination of guilt, however, must not be automatically and arbitrarily applied as aggravating factors. Rather, the attitude of the defendant in this regard must be evaluated in light of all the other information the court has about the defendant, and in light of all the other facts of the case in determining what relevant meaning the defendant's attitude displays with respect to his prospect for rehabili-tation and restoration to a useful place in society. (See *United States v. Grayson* (1978), 438 U.S. 41, 55, 57 L.

Ed. 2d 582, 592, 98 S. Ct. 2610, 2618.) Thus, sentencing is a very individualized proceeding. It would be highly improper to deny to the trial court the right to consider any relevant information concerning the defendant's character and his potential for rehabilitation that may be conveyed by his continued protestation of innocence and his lack of remorse, when these factors are evaluated in light of all the other information the court has received in the proceeding concerning the case and the defendant.

In our case, when the defendant responded to the court's invitation to speak, as is apparent from his comments quoted earlier in this opinion, his statement was somewhat incoherent and it was not clear exactly what his complaints were. We can gather from the statement, however, that he had some dissatisfaction with the way his attorney had conducted his defense. He was also dissatisfied with having been convicted, and he asserted that he was innocent. The trial judge had heard the evidence, including the defendant's testimony. From this evidence he had found the defendant guilty of burglary, but not guilty of the offenses of attempted murder and armed violence. The defendant's assertion of innocence at the sentencing hearing is consistent with his testimony at the trial concerning the burglary charge, which the court obviously had not believed. We must consider the judge's statement concerning the defendant showing no repentance in light of the finding by the court that he was guilty, his continued protestation of innocence, and the defendant's criminal history. In fact, in response to the defendant's statement in one paragraph the court mentioned each of these factors. We do not know what other factors, not revealed by the cold record, such as tone of voice, facial expression and general demeanor, led to the judge's conclusion that the defendant showed a lack of contrition. The trial judge was in a superior position to appraise all of these factors. The judge had the

right to evaluate and consider the defendant's lack of contrition and protestation of innocence in light of the other relevant facts in the case. Absent an abuse of this discretion, which we do not find evident from this record, the trial court's sentence should not be altered. *People v. Perruquet* (1977), 68 Ill. 2d 149, 154.

The defendant argues that if a trial court may consider his lack of remorse and protestation of innocence, then in order to secure a lenient sentence a defendant would be placed in a position of being compelled to incriminate himself and destroy his appeal and collateral remedies. This argument is similar to that of the defendant in *United States v. Hendrix,* where the defendant argued that a similar position by the trial court in that case had a "chilling effect" on a defendant considering whether to take the stand and testify. The court responded:

> "Without denying that the point has substance, we may say that it is not wholly evil to discourage defendants from taking the stand to lie." *(United States v. Hendrix* (1974), 505 F.2d 1233, 1236.)

The Supreme Court made a similar response to a similar argument in *United States v. Grayson,* stating:

> "Assuming, *arguendo,* that the sentencing judge's consideration of defendants' untruthfulness in testifying has any chilling effect on a defendant's decision to testify falsely, that effect is entirely permissible. There is no protected right to commit perjury." *(United States v. Grayson* (1978), 438 U.S. 41, 54, 57 L. Ed. 2d 582, 592, 98 S. Ct. 2610, 2617-18.)

Thus, in our case the defendant, under the statutory right of allocution (Ill. Rev. Stat. 1983, ch. 38, par. 1005—4—1(a)(5)), had a right to speak in his own behalf, but in doing so he did not have the right to lie with impunity. What he said should be considered by the trial judge in light of all the other information presented to

the court during the trial and the sentencing hearing in evaluating the defendant's character and his potential for rehabilitation.

We have provided, by constitution and by statutes, certain procedural safeguards in criminal proceedings. We cannot penalize a defendant for asserting his right to these safeguards, such as the right to a trial (either by a jury or by the court), the right to appeal and the right of post-trial collateral proceedings. However, these proceedings have not been created to provide a forum for the perpetration of perjury. The defendant in this case, when given the opportunity to speak in his own behalf, had a right to say nothing or he had the right to speak freely, not addressing the question of his guilt or innocence, or he had the right to use the opportunity for a protestation of his innocence. When he did the latter, the trial court could incorporate the legitimate inferences drawn from this assertion, including whether the assertion was truthful, into the balance in considering the relevant factors bearing on the defendant's character and potential for rehabilitation.

Our holding in this case is not contrary to the holding of this court in *In re Wigoda* (1979), 77 Ill. 2d 154, where it was held that a respondent's continuing belief in his innocence was insufficient to bar reinstatement to the practice of law. In that case this court relied on *In re Hiss* (1975), 368 Mass. 447, 457-58, 333 N.E.2d 429, 436-37, and quoted at length from that opinion. In the quoted language is the statement that the continued assertion of innocence in the face of a prior conviction does not " 'constitute *conclusive* proof of lack of the necessary moral character to merit reinstatement.' " (Emphasis in original.) (*In re Wigoda* (1979), 77 Ill. 2d 154, 160.) *Wigoda* further quoted from the Massachusetts case to the effect that the court refused to " 'disqualify a petitioner for reinstatement *solely* because he con-

tinues to protest his innocence of the crime of which he was convicted. Repentance or lack of repentance is evidence, like any other, to be considered in the evaluation of a petitioner's character ***.' " (Emphasis in original.) (77 Ill. 2d 154, 161.) Thus, while the continued protestation of innocence may not be conclusive, such an assertion may, nonetheless, be evaluated in light of the other relevant factors, and the inferences drawn from such an evaluation may be considered by the court.

For the above reasons the judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE SIMON, dissenting:

The majority holds that the trial judge did not abuse his discretion when he rejected the minimum term of years and "double[d] that" because the defendant "show[ed] no contrition." My colleagues, however, have failed to examine the constitutional implications of their decision. Convicted defendants have a due process right to a fair sentencing procedure. (See *United States v. Rone* (7th Cir. 1984), 743 F.2d 1169, 1171.) By permitting the trial judge to increase the defendant's sentence when he proclaims his innocence, the majority condones the violation of two fundamental due process rights.

First, the majority penalizes the defendant for proclaiming his innocence when he exercises his statutory right to speak before sentencing. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—4—1(a)(5).) Not only is this practice fundamentally unfair (see *In re Wigoda* (1979), 77 Ill. 2d 154, 160), but also it ignores the possibility that the defendant could actually be innocent—that an innocent man could conceivably have been convicted. As this court has already stated, such a view places " 'a mantle of absolute and inviolate perfection on our system of justice, *** an attribute that cannot be claimed for any hu-

man institution or activity.' " *In re Wigoda* (1979), 77 Ill. 2d 154, 160, quoting *In re Hiss* (1975), 368 Mass. 447, 458, 333 N.E.2d 429, 437.

Second, permitting a trial judge to impose a longer sentence when a defendant proclaims his innocence violates the defendant's fifth amendment right against self-incrimination. (*Thomas v. United States* (5th Cir. 1966), 368 F.2d 941; *People v. Leckrone* (1985), 134 Ill. App. 3d 978; *People v. Speed* (1984), 129 Ill. App. 3d 348; see, *e.g., People v. Sherman* (1977), 52 Ill. App. 3d 857.) In proclaiming his innocence, the defendant chose to exercise his fifth amendment right not to be a witness against himself. Had he admitted that he was guilty, this could have been used against him as an admission should he have been granted a new trial, and it also could have jeopardized his appeal and collateral remedies. The ramifications of admitting guilt are vividly illustrated in this case because the defendant raised on appeal whether he had been convicted beyond a reasonable doubt.

The majority justifies imposing double the minimum sentence by inaccurately equating the defendant's claim of innocence with a showing of "no repentance in light of the finding by the court that he was guilty" (113 Ill. 2d at 530). A defendant, however, "can hardly be expected to be remorseful for something he contends he did not do." (*People v. Evans* (1986), 143 Ill. App. 3d 236, 242.) Hence the majority's discussion of remorse in the present case misses the mark.

While the majority concedes that defendants possess certain rights in the sentencing process, it asserts that these rights were not created to provide a forum for perjury. The defendant in this case, however, has not been charged with perjury. If he was suspected of perjury, the defendant should have been charged with this crime. Denying a defendant his constitutional rights when he needs them the most, however, strips these rights of

their meaning.

Finally, the majority contends that "[t]here is no direct statement in this case which indicates that the judge was predisposed to impose a more severe sentence because of the defendant's failure to plead guilty." (113 Ill. 2d at 527.) While I agree that the trial judge did not say these words verbatim, when a judge says that he will "reject the minimum term of three years and *** double that" after the defendant proclaims his innocence, this is a direct message that the defendant should have either admitted his guilt when he insisted he was not guilty or waived his statutory right to allocution.

A trial judge clearly has discretion to sentence a defendant to any term within the bounds of the statute. In determining the appropriate sentence, the judge may certainly take a myriad of factors, including a defendant's remorse, into account. The judge, however, may not sentence a defendant for an impermissible reason. Because the judge in the present case penalized the defendant for exercising both his statutory right of allocution and his constitutional privilege against self-incrimination he abused his discretion. Therefore, this case should be remanded for resentencing.

CHIEF JUSTICE CLARK joins in this dissent.