NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 240245-U

NO. 4-24-0245

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 17, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Fulton County |
| ANTHONY M. MALONE, | ) | No. 24CF19 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Bruce C. Beal, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE CAVANAGH delivered the judgment of the court.
Justices Harris and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, finding the trial court did not abuse its discretion when denying defendant pretrial release despite factually misstating defendant's criminal history.

¶ 2    Defendant, Anthony M. Malone, appeals the trial court's order revoking his pretrial release pursuant to the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110 *et seq.*) (West 2022)), hereinafter as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly referred to as the Pretrial Fairness Act. See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act). On appeal, defendant argues the court erred when it relied on convictions that did not exist to support a finding that he posed a real and present danger and no conditions of pretrial release could mitigate the threat he posed. We affirm.

¶ 3                          I. BACKGROUND

¶ 4        On February 8, 2024, defendant was charged by information with three counts of domestic battery (720 ILCS 5/12-3.2(a)(1), (2) (West 2022)), alleging he (1) caused bodily harm to Alyssa Davidson by striking her in the face after having been previously convicted of domestic battery in Fulton County case No. 22-DV-35 (count I), (2) caused bodily harm to Davidson by striking her in the stomach with a can of soda (count II), and (3) made contact of an insulting and provoking nature by knocking Davidson to the floor (count III). The State filed a petition to deny defendant pretrial release.

¶ 5        The State proffered Davidson and defendant were arguing when Davidson stated she was going to leave and stay with her mother. Defendant demanded one of the children would stay with him and proceeded to pick up that child. At that time, Davidson tried to take the child away from defendant. Defendant pushed Davidson to the ground. Davidson got up from the ground and demanded defendant give her the child. Defendant then grabbed Davidson by the hair and, in turn, she grabbed defendant's hair until they both let go. Davidson grabbed the child's arm and told defendant, " 'She can't go with you.' " Defendant slapped Davidson "not very hard" but then slapped her again, causing Davidson to fall to the floor. Defendant put the child down and began to leave, but as he left, he grabbed a different child. Davidson stated she threw a skateboard at defendant but missed. Defendant threw a can of soda at Davidson and hit her in the stomach. Davidson had a bruise on her eye and stomach. After Davidson left the home for her mother's house, defendant followed her and brought her back to their shared residence.

¶ 6        The State also proffered that when police made contact with defendant to arrest him for this offense, they discovered a "white crystal substance" that field-tested positive for methamphetamine. Defendant was also charged separately for this drug offense in Fulton County case No. 24-CF-18, but the State was not seeking pretrial detention on that case.

¶ 7        The trial court found probable cause existed for both Fulton County cases. The matter immediately proceeded to a detention hearing solely on the domestic battery charges. The court took judicial notice of the pretrial report prepared by the Fulton County Probation Department and the State's probable cause proffer.

¶ 8        The pretrial report showed defendant and Davidson had lived together for the past two years and shared three children together, ages six, four, and one. Defendant was placed on 24 months' probation in Fulton County case No. 21-CF-104 on December 4, 2023, wherein he was convicted of criminal trespass to a residence with a person present. Since being on probation, he had missed three out of five appointments with his probation officer. The report indicated defendant denied any mental health issues but reported in the interview " '[he] need[ed] to speak with someone on the outside.' " When asked what this meant, defendant said " 'for these voices (pointing to his head) and things I'm hearing. They get worse when I'm in here.' " Defendant stated he used methamphetamine within the last week. He had two prior orders of protection filed against him "by his girlfriend," which had both since expired. Defendant scored an 11 out of 14 on the Revised Virginia Pre-Trial Risk Assessment, indicating he was an "Extremely-High Risk level not to appear at future appointments with the court or to reoffend."

¶ 9        As part of his negotiated guilty plea agreement in case No. 21-CF-104, his second count of violating an order of protection, alleged to have occurred in May 2021, was dismissed. Furthermore, as part of the negotiated plea, case No. 19-CF-327, with an offense date of October 2019 for aggravated child pornography and child pornography, and case No. 20-CM-230, with an offense date of August 2020 for domestic battery, were dismissed.

¶ 10          Moreover, on December 4, 2023, defendant pleaded guilty to misdemeanor theft in case No. 21-CM-81, wherein he received conditional discharge and 120 days of jail, to begin on February 23, 2024. Pursuant to his negotiated plea in case No. 21-CM-81, case No. 21-TR-843 (alleging reckless driving), and case No. 21-TR-842 (alleging fleeing or eluding a police officer), were dismissed. He also pleaded guilty on December 4, 2023, to resisting or obstructing a peace officer in case No. 21-CM-82 and received conditional discharge and 120 days in jail that would run concurrent with his other sentences. Pursuant to his negotiated plea in case No. 21-CM-82, case No. 21-CM-192 (alleging he resisted or obstructed a peace officer in August 2021), and case No. 23-CM-23 (alleging he violated an order of protection in February 2023) were dismissed.

¶ 11          Lastly, on December 4, 2023, defendant also pleaded guilty to domestic battery in case No. 22-DV-35 for an offense in May 2022. As part of that plea agreement, the accompanying two counts of violating an order of protection from the same offense date were dismissed. The pretrial report also showed a misdemeanor criminal trespass to residence in 2019, for which he received court supervision. In case No. 21-CM-139, it was alleged he violated an order of protection in May 2021, but this case was dismissed in June 2021.

¶ 12          Defendant offered his own testimony at the detention hearing. He stated he lived with Davidson and their three children. He noted he had alternative living arrangements, should he be given pretrial release, and had lived in Fulton County most of his life with family and friends in the area. Defendant was unemployed but had prospects for seasonal employment. He admitted he was on probation for "prior cases" and had missed "[t]wo or three" meetings with his probation officer but had since been meeting with his probation officer as required. He denied having a substance abuse issue or needing any treatment but would obtain an evaluation and

participate in any recommended treatment if ordered to do so. He would comply with random drug testing. He denied any mental health issues but would undergo a mental health evaluation if ordered. He indicated he was due to report to the Fulton County jail for a term of incarceration in late February.

¶ 13    The State argued no conditions of pretrial release would mitigate the threat defendant posed to Davidson because (1) home detention with monitoring would place him in the residence he and Davidson share, (2) his criminal history included a prior domestic battery, (3) children were placed in danger due to defendant's conduct, (4) he was on probation when the offense occurred, (5) he was unemployed, (6) he had a history of drug abuse, and (7) he was noncompliant with probation at the time of the offense.

¶ 14    Defendant argued electronic monitoring would be a viable option because he could find alternative living arrangements apart from Davidson. He was not a flight risk despite a couple of missed court dates because his family lived in the area. Defense counsel argued defendant needed a mental health and substance abuse evaluation.

¶ 15    The trial court found the State had proved by clear and convincing evidence that the presumption was great defendant committed a detainable offense and he posed a real and present threat. The court then went on to say:

> "And these are the facts I'm relying upon: In 2020, you were convicted of domestic battery. In 2021, you were convicted of resisting arrest or obstructing an officer. In 2021, most importantly, you were convicted of violating an Order of Protection. In 2021, again you were convicted of resisting or obstructing a police officer. In 2022, you were convicted of domestic battery. And, those indicate to me that you are not able to follow directions of the Court.

With the conviction of a domestic battery, you are supposed to stay away from the victim; and you can't seem to do that. And if I release you, I have reason to believe because of your past convictions that you still can't seem to do that; and I have been given no evidence to the contrary.

Finally, I don't think there's any condition or combination of conditions that can mitigate the real and present danger to the victim in this case because it, it involves a stay-away from her; and you've already shown that you can't stay away from victims of domestic battery cases."

¶ 16 The trial court granted the State's petition and also ordered defendant, should he be granted pretrial release in the future, to obtain a drug and alcohol evaluation, undergo random drug testing, and obtain a mental health evaluation and follow any recommended treatment. Following the conclusion of the hearing, the State indicated defendant had been calling Davidson from the jail. The court indicated defendant was statutorily required to "stay-away" from Davidson for 72 hours.

¶ 17 In its written order, when denying defendant's pretrial release, the trial court wrote:

"Based upon the nature of the allegations the relationship between the parties the possible punishments for the defendant, as well as past cases, with the Defendant being named and the indication of the defendants inability to abide by court orders, and doubt that defendant would not stay away from the victim."

¶ 18 Defendant utilized the notice of appeal form in the Article VI Forms Appendix to the Illinois Supreme Court Rules. See Ill. S. Ct. R. 606(d) (eff. Dec. 7, 2023). On the form, defendant sought relief reversing the trial court's order denying his pretrial release. Under the

grounds for relief, defendant contended the State had failed to meet its burden that (1) the proof was evident or presumption great defendant committed the offenses as charged, (2) he posed a real and present threat based on the specific, articulable facts of the case, (3) no conditions of pretrial release could mitigate the threat he posed, and (4) the court erred when determining no conditions of pretrial release would ensure his later appearance at court hearings or prevent him from being charged with a subsequent felony or Class A misdemeanor

¶ 19        This appeal followed.

¶ 20                                II. ANALYSIS

¶ 21        On appeal, defendant argues the trial court erred by relying on convictions that did not exist to support a finding that he posed a real and present danger to Davidson and no conditions of pretrial release could mitigate the threat he posed. Specifically, defendant contends the court's factual errors included findings that he (1) had been convicted of domestic battery in 2020, (2) had been convicted of violating an order of protection in 2021, (3) had been convicted of resisting or obstructing a peace officer in 2021, (4) could not stay away from the victim of his previous domestic battery conviction, and (5) had shown he could not stay away from "victims of domestic battery cases." Defendant cites *People v. Mitchell*, 152 Ill. 2d 274, 323 (1992), and *People v. Williams*, 2013 IL App (1st) 111116, for the proposition the trial court's erroneous understanding and recollection of the evidence violated his due process rights. See U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 2.

¶ 22        Defendant concedes no due-process argument was raised in the notice of appeal but requests we review the issue for plain error or ineffective assistance of counsel. Indeed, this court, in *People v. Martin*, 2023 IL App (4th) 230826, ¶ 19, stated issues not fairly raised through a liberal construction of a defendant's notice of appeal are forfeited. None of defendant's

arguments in his notice of appeal raised the issue of a due-process violation. However, we need not engage in a plain error or ineffective assistance of counsel analysis to reach the merits of defendant's contentions on appeal. First, for reasons we explain below, four of defendant's five contended factual errors are simply not errors. The one factual error defendant correctly notes was not necessary to sufficiently support pretrial detention. Second, as a reviewing court, we "may affirm on any basis appearing in the record, whether or not the trial court relied on that basis, or its reasoning was correct." (Internal quotation marks omitted.) *People v. Smith*, 2024 IL App (1st) 221455, ¶ 7.

¶ 23    We review a trial court's decision to deny pretrial release for an abuse of discretion. *People v. Inman*, 2023 IL App (4th) 230864, ¶¶ 10-11. A court abuses its discretion by issuing a decision that is arbitrary, fanciful, or unreasonable—that is, a decision with which no reasonable person would agree. *Id.* ¶ 10. The Code requires the State prove by clear and convincing evidence "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case," and "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community." 725 ILCS 5/110-6.1(e)(2), (3)(i) (West 2022). Additionally, section 110-6.1(g) requires the trial court to consider "the specific articulable facts of the case" and provides nine factors the court can also consider when assessing the real and present threat allegation. *Id.* § 110-6.1(g).

¶ 24    Defendant contends the trial court's decision to deny his pretrial release was factually erroneous. It is well established in other contexts a reviewing court should not "focus on a few words or statements of the trial court" but consider "the entire record as a whole." *People v. Ward*, 113 Ill. 2d 516, 526-27 (1986). We are uninclined to view the trial court's

statements here alone and out of context. Rather, "[w]e presume the [trial] court knows, follows, and applies the law, unless the record affirmatively rebuts that presumption." *Inman*, 2023 IL App (4th) 230864, ¶ 14.

¶ 25        One of the trial court's reasons for denying defendant's pretrial release was his alleged convictions of domestic battery in 2020 and resisting or obstructing a peace officer in 2021. Ostensibly, this is false. Our review of the record shows defendant was charged with domestic battery in 2020, but this charge was dismissed pursuant to a negotiated plea agreement in 2023. Defendant, however, was convicted of domestic battery in 2023. Thus, while the court may have inadvertently stated the wrong date, the court was not factually incorrect. Defendant had a prior conviction for domestic battery a mere two months prior to the present alleged offense. Similarly, defendant did not have a conviction for resisting or obstructing a peace officer in 2021; rather, he was charged with the offense twice in 2021. Defendant pleaded guilty to one of those offenses in 2023 and the other, from 2021, was dismissed pursuant to a negotiated plea. Here, again, the trial court appears to have inadvertently stated the wrong date, but the court was not factually incorrect. Defendant, in fact, was ultimately convicted of resisting or obstructing a peace officer.

¶ 26        Defendant argues the trial court incorrectly found he was convicted of violating an order of protection in 2021. The record shows defendant had been charged with violating an order of protection on five occasions: twice in 2021, twice in 2022, and once in 2023. Four of these charged offenses were dismissed pursuant to negotiated plea agreements. The other was dismissed outright in 2021. In this instance, the court's finding was factually incorrect. Despite the court's misapprehension, the fact that defendant had been charged with violating an order of protection five times over the last two years is, nonetheless, relevant, and his prior criminal

- 9 -

involvement was within the court's purview. In other contexts, such as sentencing, evidence showing a defendant committed other crimes is admissible despite the fact that no conviction resulted. *People v. Edgeston*, 157 Ill. 2d 201, 246 (1993). "Sentencing decisions, which are posttrial detention rulings, are the best analogy for pretrial detention rulings." *People v. Wells*, 2024 IL App (1st) 232453, ¶ 19; see *Rowe v. Raoul*, 2023 IL 129248, ¶ 49 (comparing pretrial detention hearings to sentencing hearings). During sentencing, "the ordinary rules of evidence are relaxed." *People v. Varghese*, 391 Ill. App. 3d 866, 873 (2009).

¶ 27     Indeed, much is the same for pretrial detention hearings, where the ordinary "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [pretrial detention] hearing." 725 ILCS 5/110-6.1(f)(5) (West 2022). Here, the trial court took judicial notice of the pretrial report. See *In re Ch. W.*, 408 Ill. App. 3d 541, 548 (2011) ("Judicial notice is an evidentiary concept that allows for the admission into evidence of matters without formal proof."). The report showed defendant had been charged five times for violating an order of protection. Undoubtedly, the mere presentation of this evidence did not violate his previous plea agreements. See *People v. Jorgensen*, 182 Ill. App. 3d 335, 340 (1989) ("[E]vidence of a dismissed charge does not violate a plea agreement."). The court's written order further suggested this much, where the court specifically cited defendant's past cases in which he had been "named," rather than just those of which he had been convicted.

¶ 28     Defendant further contends the trial court was mistaken when it found he showed he could not stay away from previous victims of domestic battery. As we noted above, defendant's five previous charges for violating an order of protection offer a glimpse into his plausible disregard for the court's previous orders regarding a domestic violence victim. The pretrial report indicated defendant and Davidson lived together with their three children for the

past two years. All of defendant's charges for violating an order of protection, despite being dismissed pursuant to his several negotiated plea agreements, occurred during the period when Davidson and defendant were together. Consequently, it would be a reasonable inference from these facts that all of defendant's previous charges for violating an order of protection—and his conviction of domestic battery from two months earlier—involved Davidson. The record also showed defendant called Davidson from the jail after he had been arrested. Furthermore, the factual basis for the case at bar included defendant following Davidson to her mother's home to coax her back to their shared residence.

¶ 29        We also find the cases defendant cites in support are factually distinguishable from the case *sub judice*. In *Mitchell*, the defendant testified at his motion to suppress hearing that he was specifically told by the police he could not leave. *Mitchell*, 152 Ill. 2d at 306-07. However, the trial court failed to recall this crucial evidence and incorrectly stated no evidence showed the defendant felt he could not leave or that he even requested to leave. *Id.* at 307.

¶ 30        In *Williams*, the defendant was convicted at trial of murder, home invasion, and armed robbery based on DNA evidence at the scene and testimony from a jailhouse informant. *Williams*, 2013 IL App (1st) 111116, ¶¶ 1, 5. A defense expert testified the DNA evidence merely showed the defendant could not be excluded as a suspect, but the trial court incorrectly stated the expert testified the DNA evidence inculpated defendant with certainty. *Id.* ¶¶ 8, 65. The *Williams* court found the trial court's misstatement of crucial evidence to be a due-process violation that was not harmless error. *Id.* ¶¶ 86, 98.

¶ 31        In the case *sub judice*, only one of the trial court's statements recalling the facts of this case was genuinely incorrect. The court incorrectly stated defendant had been convicted of violating an order of protection. However, this was not a crucial misstatement of the evidence, as

observed in *Mitchell* and *Williams*. That is, the record demonstrated ample grounds to support the denial of pretrial release even if the court had made no references to the violations of an order of protection charges at all. Additionally, as we explained above, defendant had been charged with violating an order of protection five times over a period when he and Davidson had been in a dating relationship. This evidence was within the purview of the court to consider, despite mistaking whether defendant had in fact been convicted.

¶ 32       Ultimately, the trial court entered an order denying defendant's pretrial release that was compliant with section 110-6.1 of the Code, wherein the court found (1) defendant was charged with detainable offenses and the proof was evident or presumption great defendant committed the offenses (see 725 ILCS 5/110-6.1(e)(1) (West 2022)), (2) defendant posed a real and present threat to Davidson (see *id.* § 110-6.1(e)(2)), (3) no conditions or combination of conditions under subsection 110-10(b) of the Code (*id.* § 110-10(b)) could mitigate the real and present threat (see *id.* § 110-6.1(e)(3)), and (4) less-restrictive conditions would not avoid that threat as required (see *id.* § 110-6.1(h)(1)).

¶ 33       Because the trial court complied with the requirements of the Code and made all the necessary findings, we find the court's decision was not arbitrary, fanciful, or unreasonable. Therefore, we find the court did not abuse its discretion by denying defendant's pretrial release.

¶ 34                           III. CONCLUSION

¶ 35       For the reasons stated, we affirm the trial court's judgment.

¶ 36       Affirmed.

- 12 -